# MORAN *v.* HORSKY.

ERROR TO THE SUPREME COURT OF THE STATE OF MONTANA.

No. 177. Argued and submitted March 12, 1900.—Decided May 21, 1900.

A neglected right, if neglected too long, must be treated as an abandoned right, which no court will enforce.

Whenever the invalidity of a land patent does not appear upon the face of the instrument, or by matters of which the courts will take judicial notice, and the land is apparently within the jurisdiction of the land department as ordinary public land of the United States, then it would seem to be technically more accurate to say that the patent was voidable, not void.

The defence of laches, put in in this case, is the assertion of an independent defence, proceeding upon the concession that there was, under the laws of the United States a prior right, and conceding that, says that the delay in respect to its assertion prevents its present recognition; and the court is of opinion that the decision of the Supreme Court of Montana in this case was based upon an independent non-Federal question, broad enough to sustain its judgment.

THE facts in this case are as follows: On June 15, 1872, a patent was issued to the probate judge of Lewis and Clarke County, Montana Territory, for the townsite of Helena, in trust

for the benefit of the occupants. In 1874 Joseph Horsky, Jr., the plaintiff below, defendant in error, became by purchases from prior occupants and conveyances from the probate judge the holder of the legal title to certain lots, shown on the plat of the town. He entered into occupation at the date of his purchase, and has been in undisturbed and peaceful possession from that time to the present. Among these lots are two known and described as lots Nos. 19 and 20, in block 37, on the original plat of the townsite. Subsequent surveys disclosed that, measured by the description on the plat and the calls of the deed, there was an extra area of ground 22 feet front by 103 feet deep. When that fact was discovered the grantor of the plaintiff applied to the probate judge for a conveyance of this extra ground, and paid him the requisite price therefor. However, he received no deed at that time, apparently supposing the deeds for lots 19 and 20 would carry the ground; but afterwards, and on December 15, 1888, on application of the plaintiff, and upon the basis of the prior application and the payment of the necessary price, the probate judge made a deed to him of that extra area known and described on a subsequent plat as lot 31, block 37. In 1891 he filed his complaint in the District Court of the First Judicial District of the State of Montana, setting forth these facts, and that the defendant, Patrick Moran, had, on December 11, 1888, obtained from the probate judge a deed for this lot 31, alleging that it was wrongfully obtained, and praying for a decree quieting his title.

The case thus presented was litigated in the state courts for two or three years, passed to the Supreme Court of the State, (13 Mont. 250,) where a decree in favor of the plaintiff was reversed, and finally came on for hearing in the District Court upon the bill of plaintiff, setting forth the facts, as above stated, and an amended answer of the defendant, containing these averments: That on the 2d day of March, 1869, the probate judge of Lewis and Clarke County made an entry of the tract of land for the benefit of the occupants of the townsite of Helena; that prior to the entry of said townsite a certain placer mining claim had been located within the exterior limits of the tract so entered, which included within its boundaries the lot in contro-

versy; that the location had been made pursuant to the laws of the United States, the local laws, and the rules and regulations of the mining district, and all had been done required thereby to make a perfectly valid location of said placer mining claim, and that the title to this mining claim thus located passed to the defendant; that it was a valid and subsisting mining claim at the time of the entry of the land by the probate judge and of the patent to him; that after the entry of the townsite, and prior to 1874, the defendant left the State of Montana, leaving the mining claim in possession of an agent; that during his absence the plaintiff obtained his deeds for the premises referred to, and entered into possession; that when the defendant returned to Montana he found the plaintiff in possession; that he had ever since been, by the action of the plaintiff, prevented from entering upon or working such mining claim; and that in December, 1888, finding that no deed had ever been made to the plaintiff for this portion of the property, he obtained in furtherance and protection of his own title a deed from the probate judge, which was the deed referred to in plaintiff's complaint.

Upon these pleadings a decree was entered by the District Court in favor of the plaintiff, quieting his title to the premises. On appeal to the Supreme Court of the State this decree was affirmed, (21 Mont. 345,) whereupon the case was brought on error to this court.

*Mr. Thomas J. Walsh* for plaintiff in error. *Mr. Rufus C. Garland* was on his brief.

*Mr. Edwin W. Toole* for defendant in error submitted on his brief.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The Supreme Court of the State affirmed the decree of the trial court primarily on the ground of laches. If this be an independent ground, involving no question under the Federal

statutes, the decision of the Supreme Court must be sustained and the writ of error dismissed. *Eustis* v. *Bolles,* 150 U. S. 361.

Indeed, if the matter of laches can be recognized at all, it is difficult, independently of the question of jurisdiction, to perceive any error in the ruling of the state Supreme Court. One who, having an inchoate right to property, abandons it for fourteen years, permits others to acquire apparent title, and deal with it as theirs, and as though he had no right, does not appeal to the favorable consideration of a court of equity. We need only refer to the many cases decided in this court and elsewhere, that a neglected right, if neglected too long, must be treated as an abandoned right which no court will enforce. See among others *Felix* v. *Patrick,* 145 U. S. 317; *Galliher* v. *Cadwell,* 145 U. S. 368, and cases cited in the opinion. There always comes a time when the best of rights will, by reason of neglect, pass beyond the protecting reach of the hands of equity, and the present case fully illustrates that proposition.

We, therefore, pass to an inquiry whether the question of laches is so intermingled with that of Federal right that the former cannot be considered an independent matter. As this case was disposed of upon bill and answer, we must take the facts to be as they are presented by the pleadings.

At the time of the commencement of the several proceedings referred to in the bill and answer, the entire area of ground compassed within the limits of the townsite of Helena was public land of the United States, subject to be taken under the preemption, homestead, townsite or mineral laws. There was no reservation in behalf of any railroad company, or for military or other purposes. The whole tract was subject to private appropriation. Under those circumstances, the probate judge of the county made an application for an entry of the tract, as a whole, as a townsite. His application was entertained, the entry made, and thereafter a patent issued to him for the entire tract, including the premises in controversy. Apparently, therefore, by the terms of the patent the legal title to this land had passed to the probate judge in trust for the several occupants. But we are referred by counsel to *Deffeback* v. *Hawke,* 115 U. S. 392, 393, in which it was held that a patent under

the townsite act is "inoperative as to all lands known at the time to be valuable for their minerals, or discovered to be such before their occupation and improvement for residences or business under the townsite title;" and this by virtue of the express provisions of the law relating to the disposition of lands for townsites, as follows: "No title shall be acquired under the foregoing provisions of this chapter to any mine of gold, silver, cinnabar or copper, or to any valid mining claim or possession held under existing laws." Rev. Stat. § 2392.

The ruling in this case was qualified in *Davis's Administrator* v. *Weibold*, 139 U. S. 507, and it was held that the title of a lot owner holding a deed from the probate judge who had entered the lands under the townsite act could not be defeated because after the issue of the patent there was a discovery of minerals and an issue of a patent therefor to the discoverer, the court saying, on p. 524, after referring to some decisions of the land department:

"It would seem from this uniform construction of that department of the government specially intrusted with supervision of proceedings required for the alienation of the public lands, including those that embrace minerals, and also of the courts of the mining States, Federal and state, whose attention has been called to the subject, that the exception of mineral lands from grants in the acts of Congress should be considered to apply only to such lands as were at the time of the grant known to be so valuable for their minerals as to justify expenditure for their extraction."

The allegations of the answer are to the effect that there was a known mining claim, actually located and worked, at the time of the entry and patent of the townsite, and the argument is that the mining claim was excepted from the scope of the townsite patent as completely as though the exception had been in terms named on the face of the instrument and the boundaries claimed described. The probate judge, therefore, never took title, and having none conveyed none to the plaintiff; the title remained in the government, and neither laches nor limitation run against the rights and title of the government. The mining claim existed, and although defendant had

abandoned it for years, yet as no one had taken steps to relo-
cate it, he had the right to resume possession and continue work
in the way of perfecting his title.

In an opinion by a judge of the state District Court, deliv-
ered in deciding this case, is an interesting discussion of the
difference between a void and voidable patent, and many au-
thorities from this court are quoted. We shall not attempt to
refer to all of them, but content ourselves with noticing one or
two. In *United States* v. *Schurz*, 102 U. S. 378, it was held
that mandamus would lie to compel the delivery of a land pat-
ent which had been duly signed, sealed, countersigned and re-
corded; that by those acts the title had passed to the patentee,
and nothing remained but the ministerial duty of delivering the
instrument. In that case there was a matter of dispute between
the patentee, who had made a homestead entry, and other par-
ties who claimed that the land was within the incorporated
limits of the town of Grantsville, and that the entry had been
wrongfully sustained. In the course of a very careful opinion
by Mr. Justice Miller, it was said (pp. 400, 401):

"It is argued with much plausibility that the relator was not
entitled to the land by the laws of the United States, because
it was not subject to homestead entry, and that the patent is,
therefore, void, and the law will not require the Secretary to do
a vain thing by delivering it, which may at the same time em-
barrass the rights of others in regard to the same land.

"We are not prepared to say that if the patent is absolutely
void, so that no right could possibly accrue to the plaintiff un-
der it, the suggestion would not be a sound one.

"But the distinction between a void and a voidable instru-
ment, though sometimes a very nice one, is still a well recog-
nized distinction on which valuable rights often depend. And
the case before us is one to which we think it is clearly appli-
cable. To the officers of the land department, among whom
we include the Secretary of the Interior, is confided, as we have
already said, the administration of the laws concerning the sale
of the public domain. The land in the present case had been
surveyed, and, under their control, the land in that district gen-
erally had been opened to preëmption, homestead entry and

sale. The question whether any particular tract, belonging to the government, was open to sale, preëmption or homestead right, is in every instance a question of law as applied to the facts for the determination of those officers. Their decision of such question and of conflicting claims to the same land by different parties is judicial in its character.

"It is clear that the right and the duty of deciding all such questions belong to those officers, and the statutes have provided for original and appellate hearings in that department before the successive officers of higher grade up to the Secretary. They have, therefore, jurisdiction of such cases, and provision is made for the correction of errors in the exercise of that jurisdiction. When their decision of such a question is finally made and recorded in the shape of the patent, how can it be said that the instrument is absolutely void for such errors as these? If a patent should issue for land in the State of Massachusetts, where the government never had any, it would be absolutely void. If it should issue for land once owned by the government, but long before sold and conveyed by patent to another who held possession, it might be held void in a court of law on the production of the senior patent. But such is not the case before us. Here the question is whether this land had been withdrawn from the control of the land department by certain acts of other persons, which include it within the limits of an incorporated town. The whole question is one of disputed law and disputed facts. It was a question for the land officers to consider and decide before they determined to issue McBride's patent. It was within their jurisdiction to do so. If they decided erroneously, the patent may be voidable, but not absolutely void."

Now, as we have heretofore noticed, the patent in the case before us for the townsite purported to convey the entire tract. On the face of the instrument there was nothing to suggest any exception. While it may be conceded, under the authorities which are referred to, that, in an action at law by a claimant under that patent, the existence of a mining claim at the time of its issue might be shown and be a valid defence to a recovery of so much of the ground as was included within the mining

claim, and in that view it may perhaps be not inaptly said that the patent was to that extent void. But be this as it may, whenever the invalidity of a patent does not appear upon the face of the instrument, or by matters of which the courts will take judicial notice, and the land is apparently within the jurisdiction of the land department as ordinary public land of the United States, then it would seem to be technically more accurate to say that the patent was voidable and not void. Even in cases where it has been called void the right of the United States to maintain a bill to set aside the patent has been sustained. Thus, in *United States* v. *Stone*, 2 Wall. 525, patents had been issued for certain lands, (which were in fact within the limits of Fort Leavenworth Military Reservation,) and a bill in equity was filed by the United States to set them aside. Mr. Justice Grier, delivering the opinion of the court, sustaining the decree of the Circuit Court in favor of the government, uses this language (pp. 535, 537):

"Nor is fraud in the patentee the only ground upon which a bill will be sustained. Patents are sometimes issued unadvisedly or by mistake, where the officer has no authority in law to grant them, or where another party has a higher equity and should have received the patent. In such cases courts of law will pronounce them void. The patent is but evidence of a grant, and the officer who issues it acts ministerially and not judicially. If he issues a patent for land reserved from sale by law, such patent is void for want of authority. But one officer of the land office is not competent to cancel or annul the act of his predecessor. That is a judicial act, and requires the judgment of a court.

"It is contended here, by the counsel for the United States, that the land for which a patent was granted to the appellant was reserved from sale for the use of the government, and, consequently, that the patent is void. And although no fraud is charged in the bill, we have no doubt that such a proceeding in chancery is the proper remedy, and that if the allegations of the bill are supported, that the decree of the court below cancelling the patent should be affirmed.

*    *    *    *    *    *    *    *

" We are of opinion, therefore —

" 1. That the land claimed by appellant never was within the tract allotted to the Delaware Indians in 1829 and surveyed in 1830.

" 2. That it is within the limits of a reservation legally made by the President for military purposes.

" Consequently, the patents issued to the appellants were without authority and void."

Suppose the United States had brought a bill to set aside so much of this townsite patent as included the mining claim referred to, as, under the authority last referred to and many others, it might have done, it would, under the circumstances disclosed, have been a suit in the interest of and for the benefit of the defendant, and in order to enable him to perfect his inchoate title to this mining property. But it is well settled that when the government proceeds to set aside its patent, not for the sake of establishing its own right to the property, but in the interest of some person who has an equitable claim thereto, or to whom the government owes the duty of protecting his interests, it is subjected to the same defences of laches, limitation and want of equity that would attach to a like suit by an individual. *United States* v. *Beebe*, 127 U. S. 338, in which it was said by Mr. Justice Lamar, on page 347 :

" When the government is a mere formal complainant in a suit, not for the purpose of asserting any public right or protecting any public interest, title or property, but merely to form a conduit through which one private person can conduct litigation against another private person, a court of equity will not be restrained from administering the equities existing between the real parties by any exemption of the government designed for the protection of the rights of the United States alone. The mere use of its name in a suit for the benefit of a private suitor cannot extend its immunity as a sovereign government to said private suitor, whereby he can avoid and escape the scrutiny of a court of equity into the matters pleaded against him by the other party, nor stop the court from examining into and deciding the case according to the principles governing courts of equity in like cases between private litigants.

" These principles, so far as they relate to general statutes of limitation, the laches of a party and the lapse of time, have been rendered familiar to the legal mind by the oft-repeated enunciation and enforcement of them in the decisions of this court. According to these decisions, courts of equity in general recognize and give effect to the statute of limitations as a defence to an equitable right, when at law it would have been properly pleaded as a bar to a legal right."

See also *United States* v. *Des Moines Navigation & Railway Company,* 142 U. S. 510; *Curtner* v. *United States,* 149 U. S. 662.

Now, if the government, seeking, in order to discharge its duty to the defendant, to avoid so much of the patent as included this mining claim, is bound by the ordinary rules of equity in respect to laches, etc., *a fortiori* is it true that when he is the party to the litigation the same equitable rules are binding on him. The government cannot, when acting for him, avail itself of those principles of law which are designed simply for its own protection, and no more can he, in his own litigation, shelter himself behind those principles. It is a private right which he is relying upon, although a right created under the laws of the United States, and as to this private right he is subjected to the ordinary rules in respect to the enforcement and protection of such a right.

*Carothers* v. *Mayer,* 164 U. S. 325, is worthy of notice, for in that case, although not under precisely similar circumstances, it was held that a question arising under the statute of limitations as against a title asserted under the Federal law presented no Federal question, and so also as to equitable rights asserted as against an original right under the laws of Congress. See also *The Pittsburgh & Lake Angeline Iron Co.* v. *The Cleveland Iron Mining Company et al., post,* 270.

Neither does this case in any of its aspects come within *Gibson* v. *Chouteau,* 13 Wall. 92. In that case it was held that one who acquired a legal title from the government could not be defeated in respect to that title on the ground that the party in possession had while the title was in the government acquired some equitable rights by possession or otherwise, which might

have been enforced against one who, during all. the time, had as an individual held the legal title. In other words, that as no equitable rights could be asserted against the government while it held the legal title, so when it passed the legal title to an individual he acquired all the rights which the government had at the time of the passage of such legal title. So far as that case has any bearing upon this, it tends to support the conclusions of the Supreme Court of the State of Montana, because here at l. st the apparent legal title passed to the probate judge, and thereafter to the plaintiff, and it was only an equitable and inchoate right which the defendant was trying to assert.

We conclude, therefore, that the defence of laches, which in its nature is a defence conceding the existence of an earlier legal or equitable right, and affirming that the delay in enforcing it is sufficient to deny relief, is the assertion of an independent defence. It proceeds upon the concession that there was under the laws of the United States a prior right, and, conceding that, says that the delay in respect to its assertion prevents its present recognition. For these reasons we are of the opinion that the decision of the Supreme Court of Montana was based upon an independent non-Federal question, one broad enough to sustain its judgment, and the writ of error is

*Dismissed.*