GENEVIEVE HALSTEAD MATHEW, Respondent,
v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, December 7, 1903, and July 3, 1904.*

1. **PLEADING: Petition: Evidence: Variance.** *Held,* evidence is sufficient to send the case to the jury and there is no fatal variance.

2. **PRACTICE, TRIAL: Instructions: Covering Whole Case: Rule.** Where a series of instructions taken in their entirety present a full and complete expression of the law to every phase of the case and a verdict is returned it will be upheld even though when taken separately the instructions may be incomplete and subject to criticism.

3. **PERSONAL INJURY: Medical Attention: Evidence.** Evidence held sufficient to send to the jury the question of the expenses for medical treatment and nursing.

4. ———: **Infirm Passenger: Notice: Care.** Whether a passenger be sound or infirm the carrier must use the highest degree of care; and notice of the passenger's infirmity serves to heighten the necessary degree of care; infirmities in no way diminish the carrier's liability.

5. ———: ———: **Aggravation: Jury Question: Instruction.** Though a passenger be infirm the carrier is liable for any new injury negligently inflicted and for the aggravation of old infirmities, and it is in the province of the jury to apportion the injury to the respective causes; and the use of the word "increase" in an instruction is merely equivalent to aggravation.

6. ———: **Negligence: Degree of Care: Instruction.** An instruction telling the jury that in making a coupling if the defendant used a degree of care or caution less in however small degree, than the utmost care a very cautious railroad man under the same or similar circumstances would use, then the defendant was not cautious, is approved.

On Motion to set Aside Order for Writ of Error to United States Supreme Court.

7. **APPELLATE PRACTICE: Writ of Error: Federal Question: Interstate Commerce.** Where a common carrier pleads in defense of an action counting in negligence that the injury hap-

*This case reached the REPORTER January 26, 1906.

pened because of the provisions of the Federal statute relating to the use of couplings, and the result of the trial in the State appellate court is to deny the right, privilege and immunity covered by such statute, the carrier is entitled to a writ of error to have the question reviewed by the United States Supreme Court.

8. ——: ——: ——: ——: **Color of Right.** But when by the record it appears that, though a claim of the Federal question had been made, it clearly lacks color of merit and was without substance or foundation, the mere claim is not sufficient to give jurisdiction to the United States Supreme Court.

9. ——: ——: ——: ——: ——. The record shows that the judgment in the appellate court was a denial of the immunity claimed by the defendant and that the writ of error was properly awarded.

Appeal from Clay Circuit Court.—*Hon. Joshua Alexander*, Judge.

AFFIRMED AND MOTION DENIED.

*Geo. S. Grover* for appellant.

(1)  There was a failure of proof in this case as the material averments of the petition were wholly unsupported by any evidence in the case. Nor can the plaintiff state one cause of action and recover upon another. R. S. 1899, sec. 798; Waldhier v. Railway, 71 Mo. 514; Raming v. Railway, 157 Mo. 477. (2) There is no evidence that the plaintiff ever incurred any liability on account of either medical services or hospital bills. Nor was it shown that such charges were reasonable, or that this accident occasioned them. Duke v. Railway, 99 Mo. 347; Smith v. Railway, 108 Mo. 243; Robertson v. Railway, 152 Mo. 382. (3) The court gave improper and erroneous instructions at the request of plaintiff. Fetter on Carriers of Passengers, sec. 108, p. 261; Daniels v. Railroad, 96 Ga. 786; Fitzgerald v. Hayward, 50 Mo. 523; Goetz v. Railroad, 50 Mo. 474; Flori v. St. Louis, 69 Mo. 341; Quirk v. Elevator Co., 126 Mo. 279; McMahan v. Express Co., 132 Mo. 641; Freeman v. Railway, 95 Mo. App. 94. (4) The instructions asked by defend-

ant and refused by the court should have been given. Authorities cited, supra.

*Grant I. Rosenzweig.* for respondent.

Filed argument.

SMITH, P. J.—This is an action to recover damages for personal injuries received by plaintiff in consequence of the negligence of defendant. The negligence alleged in the petition is, "that defendant by its servants moved its said engine and its cars up to and against the still car in which plaintiff was seated, without due care or caution, negligently and carelessly, and with unduly and unreasonably great swiftness, speed and suddenness, the defendant's moving engine and cars striking the still car with overgreat force and violence, unreasonably and greatly jarring the same throughout. That this plaintiff then sitting in the still car and in the exercise of reasonable care was by the shock of that collision, forced and jammed back against the seat in which she was sitting and against the sides and framework thereof, with such violence that this plaintiff's flesh on her back, legs and hip was hurt and bruised; and her internal organs were disarranged and displaced and were jarred and bruised so that they have ever since failed and refused to perform their functions. That in consequence thereof, and in order to save her life, the plaintiff's ovaries have been removed and a surgical operation has been performed by which the faeces is made to pass and has now for weeks passed from the bowels out through an opening cut in the front of the abdomen instead of through the natural channel, and plaintiff has endured the most intense pain and suffering."

The answer was a general denial coupled with which were two special defenses, that is to say: (1) that the plaintiff's physical condition did not result from the negligence of the defendant but from a pre-existing injury and disease; and (2) that the jarring and jolting of the

defendant's train at the time of and place when and where the injury complained of happened was unavoidable by reason of the coupling apparatus then used and required to be used by an act of Congress of March 2, 1893.

There was a trial in which plaintiff had judgment and defendant appealed. An examination of the evidence has convinced us that it was ample to entitle plaintiff to a submission of the case. Nor do we discover as between the *allegata* and *probata* that there is any fatal lack of correspondence.

The defendant contends that plaintiff's first instruction was erroneous in that while it undertook to cover the entire case it excluded from the consideration of the jury the two special defenses pleaded by its answer; or, in other words, it excluded from the jury the consideration of the evidence tending to show that plaintiff had no right to recover. If the rule declared by Judge Scott in Clark v. Hammerle, 27 Mo. l. c. 70. and emphasized by the majority in Sullivan v. Railway, 88 Mo. 169, had not been overthrown in the later case of Owens v. Railway, 95 Mo. 169, and in Hughes v. Railway, 127 Mo. 447, this contention would not be baseless. The rule now obtaining in this State is that where a series of instructions taken in their entirety present a full and complete exposition of the law applicable to every phase of the case and a verdict is returned thereon, it will be upheld even though when taken separately such instructions may be incomplete and subject to criticism. In such case there can be no necessity for qualifying each by reference to the others. They qualify themselves. The defendant's third and fourth given submitted the special defenses pleaded, and so the instructions when taken in their entirety cover every phase of the case and thus meet the requirements of the rule. McMahon v. Express Co., 132 Mo. 641, and Goetz v. Railway, 50 Mo. 472, cited by defendant, decide nothing at variance with the Owen and Hughes cases already referred to. In the former (the

M'cMahon and Goetz cases) it was ruled that an instruction in itself erroneous cannot be supplied, but one that gives but part of a cause may be; and this ruling is not repugnant to that made in the latter.

The defendant further objects that the action of the court in giving the plaintiff's instruction which authorized a finding for plaintiff for any necessary expenses incurred by her for the treatment of her injuries was erroneous for the reason that there was no evidence adduced in support of it. After looking at the testimony of plaintiff herself and that of Dr. Riegel, one of her physicians, and Helena Rowe, her nurse, relating to the extent and value of the medical and hospital services rendered plaintiff, we must conclude that the same was quite sufficient to justify the giving of the instruction. The evidence fully met the requirement of the rule laid down in the adjudged cases in this State. [Mirrielees v. Railway, 163 Mo. 470; Smith v. Railway, 108 Mo. 251; Robertson v. Railway, 152 Mo. 393; Morris v. Railway, 144 Mo. 500.]

The defendant further objects that the court erred in giving plaintiff's fourth and fifth instructions. The fourth told the jury that the use of a railway passenger carrier was not confined alone to persons who were physically sound but was open also to those ailing and infirm within reasonable degrees, and that whether or not plaintiff was in reasonable physical condition to travel by defendant's railroad from and to the places mentioned in the petition, if the defendant has used proper care as defined in other instructions, was for the jury under the evidence to decide. The fifth went a step further and told the jury that if plaintiff was not entirely well at the time she received the injury, but yet was reasonably able to have made the said trip without injury had defendant used proper care as defined in other instructions, then if it (the jury) found the issues submitted by plaintiff's other instructions, the plaintiff was entitled to recover for the *"increase* of her

former ailments, if any, and for such new injuries, if any, as it might believe resulted directly from the improper coupling, if any." Whether the plaintiff was sound or infirm in health at the time she received the injuries of which she complains, it was the duty of defendant in the management and movement of the train on which she was then riding as a passenger to exercise the utmost diligence and care of very prudent persons. [Sweeney v. Railway, 150 Mo. 401; O'Connel v. Railway, 106 Mo. 484; Leslie v. Railway, 88 Mo. 55.] And if while exercising such care in the movement of its train the plaintiff received the injuries of which she complains, there would be no liability.

It is suggested by the defendant that it had no notice of the plaintiff's infirmities at the time of the receipt of her injury; assuming, as we must, that this was so, then the plaintiff was entitled to the same general degree of high care which was the right of all passengers. The effect of notice of the passenger's infirmities is to increase the measure of the carrier's duty. When there is no such notice it owes him no other or higher duty than it does to the other passengers who are not infirm. [Hanks v. Railway, 60 Mo. App. 274; Deming v. Railway, 80 Mo. App. 152; Fleming v. Railway, 89 Mo. App. 140; Owens v. Kansas City, 95 Mo. 169.] The physical condition of the plaintiff in no way diminished the liability of the defendant. [Brown v. Railway, 66 Mo. 588.]

It is further objected that the latter of said instructions (the fifth) authorized the jury to find for the *increase* of former ailments and for such new injuries as had been occasioned by the accident. The defendant pleaded as a special defense, as has already been stated, that the plaintiff's injuries resulted from pre-existing infirmities and not from an improper coupling of its cars at the time she alleged. There was evidence which tended to prove that the plaintiff at the time of the coupling was suffering from certain female ailments

and that the effect of the jolt occasioned by the coupling was to augment or aggravate such ailment. There was also some evidence tending to prove new and independent injuries were received in consequence of the jolt. The term *increase* is the synonym of *augment or aggravate* and its presence in the plaintiff's instruction was authorided by the pleadings and evidence. In authorizing a recovery for the aggravation or increase of the injuries it did not mislead the jury to the prejudice of the defendant because whether the injuries consisted of an aggravation or increase of a pre-existing ailment, or were new, could make no difference, if either or both were caused by the negligent act of the defendant, as alleged in the petition. It was the province of the jury to apportion the injury to the respective causes. [Paul v. Railway, 82 Mo. App. 500.] And this instruction did not authorize a recovery for any injury that did not result from the defendant's negligence. We cannot say in the face of all the evidence that there was but one inference to be deduced therefrom and that was that the plaintiff was guilty of negligence; and therefore whether she was or was not guilty of negligence on her part was a question for the jury which, under the requirements of plaintiff's first instruction, was submitted to it.

The plaintiff's instruction which told the jury that "in making the coupling if the defendant used a degree of care or caution less in however small a degree than the utmost care a very cautious railroad man under the same or similar circumstances, then the defendant was not cautious," was a correct expression of the rule, as may be seen by reference to Waller v. Railway, 83 Mo. 608, and the other cases elsewhere cited herein.

The case in some respects is rather a complicated one, but when in all and all considered we are of the opinion that it was fully and fairly submitted to the consideration of the jury and with whose verdict no just ground for complaint has been made.

The judgment must be affirmed. All concur.

ON MOTION TO SET ASIDE ORDER GRANTING WRIT OF ERROR TO UNITED STATES SUPREME COURT.

*Geo. S. Grover* for appellant.

(1) When the right exists. Section 709, R. S. U. S. 1901; Dupasseur v. Rochereau, 21 Wallace 130; Railroad v. Maryland, 21 Wallace 467; Belden v. Chase, 150 U. S. 674; See also, Stanley v. Schwalby, 147 U. S. 508; Stare Co. v. Butler, 166 U. S. 660; Railway v. Chicago, 166 U. S. 226; Mallett v. North Carolina, 181 U. S. 589-592; Railway v. Elliott, 184 U. S. 534; State v. Bland, 168 Mo. 1; Railroad v. Pearce, 6 Sup. St. Rep. February 15, 1904, 232, 233.

*Grant I. Rosenzweig* for respondent.

(1) The case of Railroad v. Elliott, 184 U. S. 530 (which was once before this court), does not justify Federal appeal in this case. The point there was whether a bond given in Federal injunction case should be governed as to allowance of attorney fee by the Federal rule or by the State rule. The state court refused to enforce the Federal rule. In that case, therefore, there was a direct denial in a State court of a Federal law. In the case at bar there has been no denial by any State court of any Federal law. (2) A mere claim in words that a federal question is involved is not enough. Such question must be present in fact, and must be real and substantial and be such that upon its determination the result of the case depends. Lampassses v. Ball, 180 U. S. 282; Kennard v. Neb., 186 U. S. 308; Swerringen v. St. Louis, 185 U. S. 44; Blackborn v. Portland, 175 U. S. 588; New Orleans v. La. 185 U. S. 344, 351; Gableman v. Peoria, 179 U. S. 339; New Orleans v. Benjamin, 153 U. S. 411; Swafford v. Templeman, 185 U. S. 493; 167 U. S. 662; Kisar v. Taxark, 179 U. S. 199; Bels v. Cone, 188 U. S. 184; DeLamar v. Nesbitt, 177 U. S. 527; Iowa

v. Rood, 187 U. S. 87. (3) That a Federal statute is involved is not enough. The statute must first be denied force and effect by the State court. Baker v. Baldwin, 187 U. S. 61; Rea v. Homestead, 176 U. S. 121; Mo. v. Andriano, 138 U. S. 496; Affirmed, 181 U. S. 186; 179 U. S. 201; 172 U. S. 641; 160 U. S. 238; 160 U. S. 292; Conde v. York, 168 U. S. 642; Affirmed, 170 U. S. 41; 176 U. S. 682; 185 U. S. 44; Shoshone v. Rutter, 177 U. S. 505. (4) Where the case is decided upon some other point, apart from or after applying the Federal law, a Federal question is not involved, unless there was an adverse decision upon the Federal law. Sweringen v. St. Louis, 185 U. S. 45; Hale v. Lewis, 181 U. S. 479; Moran v. Horskey, 178 U. S. 207-215; Eustis v. Boles, 150 U. S. 361; Affirmed, 183 U. S. 693; 181 U. S. 480; 179 U. S. 198; 178 U. S. 208; 171 U. S. 641; 162 U. S. 283; Seeberger v. McCormick, 175 U. S. 280; Citizen v. Owensboro, 173 U. S. 643.

SMITH, P. J.—This is an action which was brought by the plaintiff against the defendant to recover damages for personal injuries alleged to have been received by the former on account of the negligence of the latter in operating its trains of cars. The answer was a general denial to which was added two special defenses: One was that of the plea of contributory negligence; and the other, "Further answering, defendant says that whatever injury, if any, was received by plaintiff, on or about the 12th day of September, A. D. 1899, at or near Excelsior Springs Junction, on the railroad of defendant, was solely the result of the negligence of the plaintiff in then and there failing to exercise ordinary care, or any care whatever, for her own safety. . . . That all of its passenger trains, on or about September, 1899, passing through Excelsior Springs Junction, on said day, were then and there, each and every one of them, engaged in transporting mail, baggage, express and passengers, from one State to another, or in interstate traffic.

That in accordance with the provisions of an act of Congress of the United States, entitled 'An act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes, and their locomotives with driving-wheel brakes, and for other purposes,' approved March 2, 1893, the defendant had in said year 1899, on September 12, 1899, under the provisions of said act, and under the directions of the Interstate Commerce Commission, a body of officers created by Congress, and duly empowered by it to supervise interstate traffic upon all railroad lines, including the lines of defendant, equipped its passenger engines and passenger cars with automatic couplers and driving-wheel brakes, as required by said act, and under the authority of said Interstate Commerce Commission.

"That said act of Congress, approved March 2, 1893, was valid, and the Congress of the United States was in 1893, ever since has been, and now is duly empowered and authorized to enact and enforce the same. That on account of so equipping its passenger trains with air brakes and automatic couplers, as required by said law, the hazard of riding upon passenger trains upon the railroad of defendant, as a passenger on said trains, was in 1899, ever since has been, now is greatly increased, which said increased hazard and risk, the plaintiff herein then and there assumed."

The replication was a general denial. There was a trial to a jury of the issues thus made by the pleadings in the court below, resulting in a verdict and judgment for plaintiff in the sum of $3,500. The defendant brought the case before us by appeal, and after the hearing of which the judgment was affirmed. After the judgment of affirmance the defendant presented to me as presiding judge an application for a writ of error to the Supreme Court of the United States. The application

Mathew v. Wabash Ry. Co.

sets forth the substance of the pleadings and further alleges:

"That at the trial of said cause, in said circuit court of Clay county, Missouri, the Wabash Railroad Company, defendant below and appellant and petitioner here, introduced ample and undisputed testimony in support of the allegations contained in its answer in said cause as aforesaid, wherein and whereby said Wabash Railroad Company, as aforesaid, therein and thereby specifically claimed and set up in its answer as aforesaid, as a complete and perfect defense to said action, said right, title and immunity as aforesaid, so claimed by it under said law of the United States.

"That said right, title and immunity under said law of the United States, so claimed by said Wabash Railroad Company in said cause as aforesaid, was denied to said Wabash Railroad Company, and a judgment rendered against said Wabash Railroad Company in said cause, in the circuit court of Clay county, Missouri, which said judgment was thereafter affirmed on appeal in this honorable court.

"That the effect of said judgment as aforesaid, and of its affirmance as aforesaid, was and is to deny to said Wabash Railroad Company, this petitioner, in said cause, a certain right, title and immunity therein specifically claimed by it under a law of the United States.

"That by virtue of the premises as hereinbefore stated, a Federal question has arisen in this case, which under the express provisions of section 709 of the Revised Statutes of the United States, then as now in force, is reviewable by writ of error from this court to the Supreme Court of the United States."

Section 709, Revised Statutes, U. S. 1901, vol. 1, p. 575, provides: "A final judgment or decree in any suit in the highest court of a State in which a decision in the suit could be had . . . where any title, right, privilege or immunity is claimed under . . . any statute of . . . the United States and the decision is against the

title, privilege or immunity *specially set up or claimed by either party* under . . . such statute . . . may be re-examined and reversed or affirmed in the Supreme Court upon writ of error." The question thus presented is, whether this is a proper case for the issue of the writ of error for which defendant has applied. If this is a case where any title, right, privilege or immunity was *claimed* under any statute of the United States and the decision was against such title, right, privilege or immunity specially set up or claimed by the defendant under such statute, then it is obvious that the decision may be re-examined, reversed or affirmed by the Supreme Court of the United States and the writ of error was providently ordered.

The defendant in its answer specially set up and claimed that under the Act of Congress of March 2, 1893, and the directions of the Interstate Commerce Commission that it was required to and did equip its passenger engines and passenger cars with automatic couplers and driving-wheel brakes, and that on account of such equipment the risk of riding upon the passenger trains run on its railway has been greatly increased, and that such increased risk the plaintiff had assumed at the time and place of the injury received by her, and that therefore it (defendant) was not liable for such injury. Whether this immunity from liability existed was the substantial question presented and decided; and whether rightly or wrongly decided, the presentation of the question, the claim of the right, privilege and immunity was denied by the trial and supervisory courts, which I think was sufficient to give the Supreme Court jurisdiction. [Wabash Railway Co. v. Pierce, vol. 24, No. 6, Supreme Court Reporter 231; Beals v. Cone, 188 U. S. 184.] In Kizer v. Railway, 179 U. S. 199, it was held by the Supreme Court of the United States that when any right, title, privilege or immunity is claimed under said section 709, and the decision of the State court is against the right, etc., specially set up or claimed under such statute,

then and in such case the judgment of the State court may be reviewed by that court. It was further held in the same case that it was not every case where a Federal statute has been construed by a State court that gives a right of review to that court, but the claim of the right, title, privilege or immunity under the statute must have been denied by the State tribunal in order to give jurisdiction to review its judgment. That a Federal statute is construed unfavorably to one of the parties to the suit is no ground for jurisdiction by that court, unless such construction was not only unfavorable but was against the right, etc., set up and claimed under the statute. In that case the party setting up and claiming the right under the statute which has been denied can obtain review in that court. In New Orleans Waterworks Co. v. Louisiana, 185 U. S. 336, it was said that, it has long been the holding of this court that in order to warrant the exercise of jurisdiction over the judgments of State courts there must be something more than a mere claim that a Federal question exists. There must, in addition to the simple setting up of the claim, be some color therefor, or, in other words, the claim must be of such a character that its mere mention does not show it destitute of merit. There must be some fair ground for asserting its existence—something more than a bare assertion of such an authority seems essential to the jurisdiction of the Supreme Court. A real and not a fictitious Federal question is essential to the jurisdiction. Not every allegation of the existence of a Federal question in a controversy will suffice for that purpose. There must be a real substantial question on which the case may be made to turn. [Wilson v. North Carolina, 169 U. S. 586; Railway v. Steele, 167 U. S. 659; Hamblin v. Land Co., 147 U. S. 531; Iowa v. Rood, 187 U. S. 87; Railway v. Elliott, 184 U. S. l. c. 534.]

The cases just cited show the rule of limitations and when by the record it appears that although a claim of a Federal question had been made, if it also clearly ap-

pears that it lacked the color of merit and had no substance or foundation, the mere fact that it was raised was not sufficient to give the Supreme Court jurisdiction. In John Bad Elk v. United States, 177 U. S. 529, it is said that, it is manifest that the object of section 709 was not to give a right of review wherever the validity of an act of Congress was drawn in question, but to prevent States from frittering away the authority of the Federal statutes. Hence, the writ of error will only lie where the decision is adverse to the right claimed; citing Dower v. Richards, 151 U. S. 658, and other cases. In Railroad Co. v. Chicago, 166 U. S. 1. c. 232, it was said that, the judgment of affirmance necessarily denied the Federal rights thus specially set up by the defendant: for that judgment could not have been rendered without deciding adversely to such claim of right. Those claims went to the very foundation of the whole proceeding, so far as it related to the railroad company, and the legal effect of the judgment of the Supreme Court was to deny them. "The true and rational rule (Bridge v. Hoboken, 1 Wall. 116, 143), is that the court must be able to see clearly from the whole record that a certain provision of the Constitution or act of Congress was relied on by the party who brings the writ of error and that the right claimed by him had been denied." In Roby v. Colehour, 146 U. S. 153, it was said that, our jurisdiction being invoked upon the ground that a right or immunity specially set up and claimed under the Constitution or authority of the United States has been denied by the judgment sought to be reviewed, it must appear from the record of the case, either that the right so set up and claimed was expressly denied, or that such was the necessary effect in law of the judgment. [DeSaussure v. Gaillard, 127 U. S. 216; Brown v. Atwell; 92 U. S. 327; Ins. Co. Needless, 113 U. S. 574; Sayward v. Denny, 158 U. S. 180; Dupassuer v. Rochereau, 21 Wall. 1. c. 134.]

There is, we conceive, no room for doubt that the legal effect of the judgment in the present case was to deny the immunity asserted and claimed by the defendant under the act of Congress as pleaded in the answer, and according to the authorities to which I have referred this was sufficient to authorize the revision of that judgment by the Supreme Court of the United States; and accordingly I shall deny the motion to set aside the order for the issue of the writ of error.