[Sac. No. 2117. In Bank.—March 30, 1915.]

HENRY D. EMERSON, Appellant, v. KENNEDY MINING AND MILLING COMPANY (a Corporation), et al., Respondents.

MINERAL LAND WITHIN TOWNSITE—CONVEYANCE BY COUNTY JUDGE TO LOCATOR IN OCCUPATION—SUBSEQUENT LOCATION AFTER FORTY YEARS—QUIETING TITLE OF SUBSEQUENT LOCATOR—LACHES.—Where a parcel of mineral land, within the limits of a patented townsite, under the act of Congress of March 2, 1867, was conveyed by the judge to grantees who were locators of the same parcel under the

mining laws and were then actually working the same as a mining claim, a subsequent locator whose location was made forty years after the issuance of the townsite patent and the conveyance by the judge, is barred by laches from maintaining an action to quiet his title against the successors in interest of such grantees, notwithstanding the latter and their several successors in interest, after acquiring the conveyance from the county judge, had ceased to perform the assessment work necessary to hold their rights to property as a mining claim, and notwithstanding the provision of the townsite law that no title shall be acquired thereunder "to any mine of gold, silver, cinnabar, or copper, or to any valid mining claim or possession held under existing laws."

ID.—PRESUMPTIONS IN FAVOR OF TOWNSITE GRANTEES.—In such action to quiet title, the court will conclusively presume in aid of the defendants and those under whom they claim, who have so long relied on the validity of the townsite patent, that the mining locations by virtue of which it is claimed the patent failed to convey title, had been abandoned, or that the mineral therein had all been extracted long before the plaintiff initiated his location, and the plaintiff's claim will be held to be stale and not enforceable in a court of equity.

APPEAL from a judgment of the Superior Court of Amador County. Fred V. Wood, Judge.

The facts are stated in the opinion of the court.

Spagnoli & Spagnoli, for Appellant.

Curtis H. Lindley, and William E. Colby, for Respondents.

SHAW, J.—The court below sustained a demurrer to the second amended complaint and thereupon gave the judgment in favor of the defendants, from which the plaintiff appeals.

The action concerns the title to a parcel of land described as lot 19, block, 11, of the townsite of Jackson, in Amador County. The object of the action is to declare the defendant's claim of title and the instrument under which it claims invalid and to quiet the title of the plaintiff to said land. The defense offered by the defendants is that the plaintiff's action is barred by laches and that his claim is a stale claim which will not be entertained or enforced by a court of equity. The basis of this defense will appear from the fol-

lowing statement of facts taken from the allegations of the complaint.

In the year 1870 the county judge of Amador County made entry of some six hundred acres of land as a townsite under the act of March 2, 1867, afterward codified as sections 2387 to 2394 of the Revised Statutes of the United States, said entry being made for the use and benefit of the occupants of the several parcels of land embraced within the said territory among which was the aforesaid lot 19, block 11. Afterward, in pursuance of said entry, a United States patent to said lands was issued to said county judge for the benefit of the said inhabitants and occupants of the respective parcels, which patent was duly recorded in the recorder's office of the county. At the time of the said entry by the county judge and of the issuance of said patent to him of said townsite, the territory embraced in lot 19 aforesaid consisted of two mining claims, known respectively as the Austrian Quartz Mine and the Steckler Quartz Mine, both of which had been previously located, possessed, and worked under the mining laws of the United States and were then and there valuable gold mines and known to be such. They had been regularly located as mining claims by Charles Steckler, who located the Steckler Quartz Mine, and by George White, who located Austrian Quartz Mine. After the entry of the townsite and before the issuance of the patent, Steckler and White made application to the county judge claiming possession of said mining claims, which had been previously surveyed under the townsite act as lot No. 19 aforesaid, and asking for a conveyance thereof, in pursuance of which, on January 6, 1872, the said county judge executed a conveyance to the said parties as tenants in common of said land. In 1889, White conveyed his interest in the property to Sultana J. White. In 1902 Sultana J. White recovered judgment against Dora Steckler and others, said to be the heirs of Charles Steckler, declaring said Sultana J. White to be the owner of all of the said property and that said defendants had no title thereto. About the same time Dora Steckler and others conveyed their interest therein to Sultana J. White. Afterward, in April, 1902, Sultana J. White conveyed the property to Samuel W. Bright. Bright died seized of whatever interest he thereby acquired in said property and after due proceedings in the administration of the estate

the said lot was sold and conveyed by the administrator on April 25, 1910, to Robert I. Kerr. Kerr, on April 26, 1910, conveyed the same to the defendant Kennedy Mining and Milling Company. It appears that after acquiring title from the county judge under the townsite law Steckler and White ceased to perform the assessment work necessary to hold their rights to property as a mining claim, under the laws of the United States for the perpetuation of the miner's location thereto, and that none of their several successors in interest ever performed such assessment work. The plaintiff, Emerson, learning of this condition of the property, on April 5, 1910, located the said property as mining claims, asserting the right to do so under the aforesaid mining laws of the United States, designating the same respectively as the North Jackson Gate Quartz claim and the South Jackson Gate Quartz claim. Claiming to be the owner by virtue of these locations he brought this action basing his ownership solely on his right under the said mining locations.

The claim of the plaintiff is that inasmuch as the property was mineral in character, was known to be valuable for gold at the time of the townsite entry and was at that time actually located and worked as a mine under the mining laws, no title was acquired thereto by virtue of the United States patent or the subsequent deed of the county judge. This claim is based on the provisions of section 2392 of the United States Revised Statutes providing that ''no title shall be acquired, under the foregoing provision of this chapter, to any mine of gold, silver, cinnabar, or copper, or to any valid mining claim or possession held under existing laws.'' If the plaintiff's mining location had been made within a reasonable time after the townsite patent and the conveyance thereunder and the forfeiture of the property as a mining claim by reason of the failure to do the requisite assessment work, there can be no doubt that the plaintiff should prevail, unless it should be held that Steckler and White, by applying for their conveyance under the townsite law and obtaining the same, had merged the mining claim into a claim under the townsite law and had accepted the patent under that law as a sufficient conveyance of their mining right so that no further confirmation of title from the United States would be necessary. This proposition, however, we do not find it necessary to determine, for we are of the opinion that whatever the right of a

CLXIX Cal.—46

claimant who had located his claim, under the mining laws, within a reasonable time, might be, the claim of the plaintiff under his location of April, 1910, is barred as a stale claim.

The plaintiff's theory is that the patent under the townsite law, so far as this land was concerned, was absolutely void by reason of the fact that said land at that time was a known gold mine and a valid mining location under the mining law, and, consequently, that no rights could be acquired under the townsite deed, either against the United States or against any subsequent location of a mining right under the United States.

It is not correct to say that a townsite patent is absolutely void, with regard to known mineral lands embraced within the territory, or with regard to mines actually at that time located, occupied, and worked. The supreme court of the United States upon this subject holds that ''a patent issued in proper form, upon a judgment rendered after a due examination of the subject by officers of the land department, charged with its preparation and issue, that the lands were nonmineral, would, unless set aside and annulled by direct proceedings, estop the government from contending to the contrary, and, as we have already said, in the absence of fraud in the officers of the department, would be conclusive in subsequent proceedings respecting the title.'' (*Barden* v. *Northern Pacific Railroad,* 154 U. S. 331, [38 L. Ed. 992, 14 Sup. Ct. Rep. 1039].) The ''judgment'' there said to be conclusive was, of course, the mere *ex parte* decision of the officers of the land department. The case of *Moran* v. *Horsky,* 178 U. S. 205, [44 L. Ed. 1038, 20 Sup. Ct. Rep. 856], is to the same effect.

In a case of this character where a patent has been regularly issued by the United States for land, some of which is mineral in character, the title to which would not pass if its mineral character were ascertained and declared, and a location under the mining laws is made after the lapse of many years, the courts of the United States have declared that the claim should be considered as stale and the action barred. In *United States* v. *Beebe,* 17 Fed. 39, speaking of a case where the patents attacked by the United States had been issued some forty-three years before the filing of the bill, the court said: ''The authorities support the proposition that lapse of time may be a good defense in equity, inde-

pendently of any statute of limitations, and they show that
the doctrine rests not alone upon laches; it is often put
upon one or all of the following grounds, namely: First,
that courts of equity must, for the peace of society and upon
grounds of public policy, discourage stale demands by re-
fusing to entertain them; second, that lapse of time will, if
long enough, be regarded as evidence against the stale claim
equal to that of credible witnesses, and which, being disre-
garded, would in a majority of cases lead to unjust judg-
ments; third, that, after the witnesses who had personal
knowledge of the facts have all passed away, it is impossible
to ascertain the facts, and courts of equity will, on this ground,
refuse to undertake such a task." Accordingly, the court
held that the United States and all its citizens claiming under
the mining laws were alike barred from the assertion of such
claim. This decision was affirmed by the United States su-
preme court in *United States* v. *Beebe,* 127 U. S. 338, 347,
[32 L. Ed. 121, 8 Sup. Ct. Rep 1083]. The court there said
further: "We are of the opinion that when the government
is a mere formal complainant in a suit, not for the purpose
of asserting any public right or protecting any public inter-
est, title, or property, but merely to form a conduit through
which one private person can conduct litigation against an-
other private person, a court of equity will not be restrained
from administering the equities existing between the real
parties by any exemption of the government designed for
the protection of the rights of the United States alone. The
mere use of its name in a suit for the benefit of a private
suitor cannot extend its immunity as a sovereign government
to said private suitor, whereby he can avoid and escape the
scrutiny of a court of equity into the matters pleaded against
him by the other party; nor stop the court from examining
into and deciding the case according to the principles gov-
erning courts of equity in like cases between private liti-
gants." There are many cases of similar character. *Moran*
v. *Horsky,* 178 U. S. 205, 213, [44 L. Ed. 1038, 20 Sup. Ct.
Rep. 856], was very like the case at bar. The court there
said: "It is well settled that when the government proceeds
to set aside its patent, not for the sake of establishing its
own right to the property, but in the interest of some person
who has an equitable claim thereto, or to whom the govern-
ment owes the duty of protecting his interests, it is subjected

to the same defenses of laches, limitation and want of equity that would attach to a like suit by an individual.'' Under these authorities the United States itself could not maintain the action which the plaintiff is here prosecuting. *A fortiori,* the plaintiff cannot be allowed to do so. The rule has been applied in cases where the lapse of time has been much less than forty years, in some cases not exceeding fourteen years. (*St. Paul etc.* v. *Sage,* 49 Fed. 315, [1 C. C. A. 256] ; *Hammond* v. *Hopkins,* 143 U. S. 224, [36 L. Ed. 134, 12 Sup. Ct. Rep. 418]. See, also, *Kleinclaus* v. *Dutard,* 147 Cal. 249, [81 Pac. 516].)

Applying these principles to the case at bar, it is clear that the plaintiff is barred. The court will conclusively presume in aid of the defendants and those under whom they claim, who have so long relied on the validity of the townsite patent, that the mining locations by virtue of which it is claimed the patent failed to convey title, had been abandoned, or that the mineral therein had all been extracted long before the plaintiff initiated his location, and the plaintiff's claim will be held to be stale and not enforceable in a court of equity.

The plaintiff relies on the decision of this court in *Callahan* v. *James,* 141 Cal. 291, [74 Pac. 853]. The facts in that case, however, were practically the reverse of the facts here appearing. There the claimant of the mining right had remained in possession under his mining location, occupying and working the mining claim under the mining law and doing the necessary assessment work from the year 1854 until the year 1879 when the patentee of the townsite conveyed to defendant's predecessors. The mining claimant had not abandoned his claim but had remained in possession and was continuing to work the mine at the time the defendant acquired his supposed title under the townsite law. The mining right had never been forfeited and, under the provisions of section 2392 aforesaid, the title thereto, as against him, never passed to the grantee under the townsite law.

For these reasons we are of the opinion that the court below decided correctly in sustaining the demurrer.

The judgment is affirmed.

Sloss, J., Lawlor, J., Melvin, J., Lorigan, J., Henshaw, J., and Angellotti, C. J., concurred.