[Sac. No. 4049. Department Two.—June 28, 1928.]

THOMAS GARRITY et al., Appellants, v. FRANK M. MILLER, as Administrator, etc., et al., Respondents.

Fern Rosenheim and Emma Tofanelli for Appellants.

H. R. Given for Respondents.

SHENK, J.—This is an appeal from a judgment of dismissal after order made sustaining, without leave to amend, a demurrer to the second amended complaint. The plaintiffs are the sons and sole heirs of Elisa Jacob, deceased. By their complaint they sought the entry of a decree impressing a trust upon certain described real property, situate in Trinity County, title to which appeared in the names of Henry and John Jacob at the time of their respective deaths. ▪ The respondent Miller, as administrator of the estate of each of said persons, interposed a demurrer, specifying, among other grounds, that the complaint fails to state a cause of action, and that by reason of plaintiffs' laches equitable relief may not be granted. That this defense may be raised by demurrer, where laches is apparent upon the face of the complaint, is now well settled in this state. (*Kleinclaus* v. *Dutard*, 147 Cal. 245, 250 [81 Pac. 516]; *Wadleigh* v. *Phelps*, 149 Cal. 627, 633 [87 Pac. 93]; *Marsh* v. *Lott*, 156 Cal. 643, 646 [105 Pac. 968]; *Ewald* v. *Kierulff*, 175 Cal. 363, 365 [165 Pac. 942]; *Hopkins* v. *Lewis*, 18 Cal. App. 107, 113 [122 Pac. 433].)

▪ The action was commenced on January 20, 1920, and the second amended complaint, thereafter filed, sets forth a series of transactions covering a period of years extending from October 12, 1865, to November 28, 1918. It is therein averred, in substance, that on October 12, 1865, the mother of the plaintiffs, Elisa Jacob, deceased, intermarried with Barthel Jacob, deceased, a brother of Henry and John Jacob; that the marital status continued until May 28, 1891, at which time Barthel Jacob passed

away. Elisa Jacob died on March 4, 1913. Proceeding, the complaint alleges that at the time of said marriage Elisa Jacob possessed in her own right certain described water rights and mining claims, patented and unpatented, situate in Trinity County; that Barthel Jacob and his brothers owned no property and were without independent means at that time; that shortly after her marriage, and upon the representations of her husband and his brothers, Henry and John, Elisa Jacob transferred and conveyed, without consideration, to Henry Jacob all of her right, title, and interest in and to certain designated water rights; that the latter in turn, and in accordance with the agreement of the parties, conveyed said water rights to Barthel Jacob, husband of Elisa; that such transfers, though absolute in form, were understood by the parties to be upon trust for the benefit of Elisa Jacob; that continuously during the existence of the marital state Elisa Jacob permitted her husband to have full management and control of her separate property, all, however, for her asserted benefit; that in the year 1883 Barthel Jacob, with the rents, issues and profits of said separate property of Elisa Jacob, purchased in his own name various other described water rights, promising that he would hold the properties in his name for her benefit; that from 1865 to 1891 Barthel Jacob, alone or in conjunction with his brothers, used and controlled all of said separate property and the additions thereto under the agreement to hold the same in trust for Elisa Jacob; that he undertook to and did perfect in his own name, but upon trust for Elisa Jacob, a patent to the "Garrity Claim," which was thereafter designated and known as the "Barthel Jacob Gold Placer Mining Claim"; that on September 21, 1887, Barthel Jacob conveyed by deed to Henry and John Jacob the said mining claim; that the grantees gave no consideration therefor and took the same with knowledge that the beneficial ownership was in Elisa Jacob; that with the rents, issues, and profits derived from said claim, and from the water rights theretofore transferred by Elisa Jacob, the Patterson and Low Bar mining claims were acquired, perfected and developed by and in the names of Barthel and John Jacob; that on September 21, 1887, Barthel conveyed, without consideration, his interest therein to Henry Jacob, who took with full knowl-

edge of Elisa Jacob's beneficial interest; that the Henry Jacob placer mine was likewise so acquired, the patent thereto issuing to Henry and Barthel Jacob; that the patentees thereafter conveyed and reconveyed certain interests therein to each other, all with the alleged consent of Elisa Jacob; that all of the property acquired by the three Jacob brothers in Trinity County was obtained through and by the use of Elisa Jacob's separate property and the rents, issues and profits therefrom, and under the agreement to hold the whole thereof, together with the additions thereto, in trust for the benefit of said Elisa Jacob; that in the year 1900, and at divers other times subsequent to the death of Barthel Jacob, Henry and John Jacob assured Elisa Jacob, in the presence of the plaintiffs, that she would receive the proceeds from the sale of any of said properties, and in the event said properties were not sold they would, by testamentary devise, appropriately transfer said properties to her; that subsequent to the death of Elisa Jacob similar assurances and promises were made to the plaintiffs; that Henry and John Jacob died intestate on June 2, 1917, and August 20, 1918, respectively; that on November 28, 1918, plaintiffs filed in the estate of John Jacob written protests and objections to the letting of the mining claims above referred to; that the estate of Barthel Jacob has never been probated; that the inventory and appraisement filed in the estate of Henry Jacob listed as assets of said estate certain specified interests in and to each of the properties above enumerated; that a similar claim of ownership was made in the petition for letters of administration filed in the estate of John Jacob; that unless the equitable title of plaintiffs to the properties standing in the names of Henry and John Jacob be established by a decree of court the plaintiffs will be deprived of their rightful inheritance. Substantially the same averments appear in the second count of the complaint, it being added, however, that the false and fraudulent representations of Barthel Jacob and his brothers served to induce Elisa Jacob to originally transfer away her separate property.

In our opinion the foregoing allegations, taken in substance from the second amended complaint, show on their face such laches as will justify a court of equity refusing to enter upon an inquiry of the merits of the plaintiffs'

claim. ■ It is well settled that from considerations of public policy equity will not lend its aid in the enforcement of stale demands. The peace' and convenience of society require that such demands be not encouraged. (*Emerson* v. *Kennedy M. & M. Co.*, 169 Cal. 718, 723 [147 Pac. 939].) This principle is well stated in *Hammond* v. *Hopkins*, 143 U. S. 244, 250 [36 L. Ed. 134, 12 Sup. Ct. Rep. 418, 427, see, also, Rose's U. S. Notes], where it is declared: "No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith and reasonable diligence, but will discourage stale demands, for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights has occurred. The rule is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible." *Harrison* v. *Gibson*, 23 Gratt. (Va.) 212, 223, states that "If, from the delay which has taken place, it is manifest that no correct account can be rendered, that any conclusion to which the court can arrive must, at best, be conjectural, and that the original transactions have become so obscured by time and the loss of evidence and the death of parties as to render it difficult to do justice, the court will not relieve the plaintiff. If, under the circumstances of the case, it is too late to ascertain the merits of the controversy, the court will not interfere, whatever may have been the original justice of the claim." The doctrine has long since been recognized in this state, the leading case upon the subject being that of *Kleinclaus* v. *Dutard, supra,* which parallels in all material respects the present case. It was said in that case: "Following the maxim that equity aids the vigilant and not those who slumber on their rights, it has been universally declared that only conscience, good faith and reasonable diligence can call a court of equity into activity, and that, entirely independent of any statutory period of limitations, stale demands will not be aided where the claimant has slept upon his rights for so long a time and under such circumstances as to make it inequitable to enter upon an inquiry

as to the validity thereof. Where such is the condition, the demand is, in a court of equity, barred by laches. . . . Where the lapse of time in the assertion of the claim and the enforcement thereof, taken in connection with the circumstances disclosed, are such as to show inexcusable delay on the part of the claimant, considerations of public policy, and the difficulty of doing entire justice, obtain, and are often sufficient to warrant a court of equity in declining, upon the ground of laches, to commence an investigation." (To the same effect see *Fleming* v. *Shay,* 19 Cal. App. 276, 278 [125 Pac. 761]; *Elliott* v. *Clark,* 5 Cal. App. 8, 10 [89 Pac. 455]; *Elliott* v. *Bunce,* 10 Cal. App. 741, 744 [193 Pac. 897]; *Emerson* v. *Kennedy M. & M. Co., supra.*) In the latter case it was declared: "The authorities support the proposition that lapse of time may be a good defense in equity, independently of any statute of limitations, and they show that the doctrine rests not alone upon laches; it is often put upon one or all of the following grounds, namely: First, that courts of equity must, for the peace of society, and upon grounds of public policy, discourage stale demands by refusing to entertain them; second, that lapse of time will, if long enough, be regarded as evidence against the stale claim equal to that of credible witnesses, and which, being disregarded, would in a majority of cases lead to unjust judgments; third, that after the witnesses who had personal knowledge of the facts have all passed away it is impossible to ascertain the facts, and courts of equity will on this ground refuse to undertake such a task."

In the present case the Jacob brothers, over a long period of years, dealt with the property in dispute as absolute owners. They developed and perfected the mining claims and water rights in their own names. They invested and reinvested the rents, issues, and profits therefrom in their own names and as they deemed best. They transferred the property so acquired, or interests therein, from one to another without ever recognizing any other person as having an interest therein. They apparently kept no accounts and rendered none to anyone. The alleged trustees died many years after the creation of the alleged trust, and the alleged original beneficiary, Elisa Jacob, died about forty-eight years subsequent to its alleged creation. This action to enforce the trust was commenced approximately fifty-five

years subsequent to its alleged inception. From the whole complaint it is apparent that the court could only arrive at the respective rights of the parties by going into an investigation of the particulars of purchases and sales of property covering a period in excess of fifty-five years. All the parties to the original transaction, out of which plaintiffs' alleged claim arose, being dead, it is manifest that it would be practically impossible for a court at this late day to do justice as between the parties. We conclude, therefore, that the trial court was justified in rendering the judgment of dismissal. We have examined the authorities cited by the plaintiffs and find nothing therein that would warrant a different conclusion on the record before us.

The judgment is affirmed.

Richards, J., and Tyler, J., *pro tem.*, concurred.