In Equity.

EDWIN O. CLARK, Admr.,

*vs.*

CHARLES E. B. CHASE, ASHUR H. CHASE AND

CHARLES K. MILLER, Judge of Probate.

Lincoln.　　Opinion February 26, 1906.

*Equity Courts.  Power to Enjoin Actions at Law.  Inequitable Conduct.  Unconscionable Advantage.  Laches.  R. S., c. 84, §§ 17, 18, 19, 20, 21.*

1.  While the court may not bar a legally blameless suitor from enforcing his most strict technical legal rights because of any hardship thereby resulting, it may by the exercise of its equity powers bar a plaintiff from enforcing even in an action at law an unconscionable advantage gained by his own inequitable conduct toward the defendant.

2.  It is inequitable for a person, having a legal right to call for an accounting, to long delay action without reason until after the death of the party liable to account, and such conduct will authorize the court to restrain him from prosecuting after such death an action at law against the sureties upon the bond for the accounting.

3.  The facts, that a Probate Court upon the petition of the ward cited the administrator of the guardian, deceased after the ward came of age, to settle an account of the guardianship, and refused to allow the account presented to him, and that no appeal was claimed by the administrator, do not constitute an irrefragable right of action by the ward against the sureties upon the guardian's bond.  An equity court can nevertheless enjoin the prosecution of the action if the failure to settle the account was caused by the inequitable conduct of the ward.

4. A plaintiff, who would be refused a decree in a suit in equity because of his laches or other inequitable conduct handicapping the defense, cannot now escape the equity powers of the court and the consequences of his laches by resorting to an action at law. When the defendant in an action at law has, without fault of his, been seriously handicapped in his defense by the laches or other inequitable conduct of the plaintiff, the court can in the exercise of its equity powers enjoin the plaintiff from prosecuting the action at law.

5. In the case at bar a Probate Court minor ward delayed, apparently without reason, asking for an accounting by the guardian till the guardian's death eight years after the ward came of age. He then caused the administrator of the guardian to be cited to settle in the probate court an account of the guardianship, which the administrator was unable to do. The ward then brought an action at law against the administrator of a deceased surety on the guardian's bond for the failure to settle an account upon citation according to the terms of the bond.

*Held:* that the laches of the ward, in his long delay till the death of the guardian, had given him an unconscionable advantage over the defendant, and that he should be enjoined from prosecuting the action.

In Equity. On appeal by plaintiff. Sustained. Decree below reversed.

Bill in equity brought by Edwin O. Clark as administrator of Joseph Clark to restrain and enjoin the prosecution of an action at law brought in name of Chas. K. Miller, Judge of Probate for Knox County, for the benefit of Chas. E. B. Chase and Ashur H. Chase, on guardian's bond of John C. Weston against said Clark as administrator of estate of Joseph Clark one of the sureties on Weston's said bond. The defendants filed a general demurrer to the bill.

Hearing had on bill and demurrer at the April term, 1905, of the Supreme Judicial Court, Lincoln County. The Justice of the first instance, after the hearing, entered the following order: "Demurrer sustained pro forma for the purpose of having the Law Court determine the legal questions involved. Bill dismissed." Thereupon a decree according to the order was filed. The plaintiff seasonably appealed, and the appeal was brought to the Law Court "to have legal questions first settled, and for this purpose by agreement."

All the material facts are stated in the opinion.

*Joseph E. Moore,* for plaintiff.

*Arthur S. Littlefield,* for defendants.

SITTING: EMERY, WHITEHOUSE, POWERS, PEABODY, SPEAR, JJ.

EMERY, J. This is a bill in equity to enjoin an action at law against a surety upon a guardian's bond for a breach of the bond by the principal. The question submitted is whether the facts alleged in the bill show any reason in law or equity why the action at law should not be maintained. A condensed statement of the allegations of fact in the bill material to our answer to the question is as follows:—

In February, 1875, Mr. Weston was appointed by the Probate Court guardian of Charles Chase and Ashur Chase two minors under the age of fourteen years (who will hereinafter be referred to as the wards) and gave the usual guardian bond of that date signed as sureties by William Brown and by Joseph Clark, the latter being the plaintiff's intestate. Mr. Weston assumed the care and management of the property of his wards, and made advances and paid bills for their support and education during their minority to a large amount. Charles Chase came of age February 8, 1891, and Ashur Chase on Nov. 8, 1894, during the lifetime of Mr. Weston the guardian. The next year, in 1895, Mr. Weston conveyed to the wards (then both of age) certain valuable real estate which they accepted and still possess. They afterward made no claim upon Mr. Weston, nor any request for his accounting to the Probate Court as their guardian during his life time up to his death Feb'y 25, 1903, nearly nine years after the youngest ward came of age and nearly eight years after the conveyance of real estate to them by Mr. Weston as above stated.

Immediately after the appointment of an administrator upon the estate of Mr. Weston the wards caused the administrator to be cited to render to the Probate Court an account of Mr. Weston's guardianship. Under this citation the administrator filed a brief account claiming a prior settlement in full between Mr. Weston and the wards after they became of age, and alleged that he could not find among the books and papers of his intestate any detailed accounts. The Probate Court refused to allow the account in discharge of Mr. Weston and the administrator did not appeal. The wards thereupon brought in the name of the Judge of Probate an action at law on the guardian's bond against the plaintiff as Administrator of Mr. Clark

one of the sureties on the bond, without joining either the Administrator of the guardian or of the other surety, and claim of this plaintiff the full amount of the penal sum $6000.

The wards claim (1) that the plaintiff failed to give in 1875, the full statutory notice of his appointment as Administrator necessary for his protection by the special statute of limitations in favor of Administrators, (2) that the failure to have the guardian's account allowed by the Probate Court was a breach of the guardian's bond, (3) that the statutory limitation of an action for that breach only began to run from that time, (4) that the non-allowance by the Probate Court of the account filed by the guardian's Administrator is conclusive upon the plaintiff here and hence it is not open to him now to allege or prove a settlement between the guardian and the wards. Granting these premises and taking no account of equitable defenses the wards would seem to be entitled to judgment. The mere hardship upon the plaintiff though evident and severe would be no ground of defense or relief in law or equity. Even an equity court cannot bar an innocent suitor from his legal rights because of any hardship their enforcement may cause others. It is only some illegal or inequitable conduct of the wards in the premises that can be allowed to stay their suit. The question therefore, is, was there any such inequity toward this plaintiff in their conduct as will authorize the court to restrain them from proceeding to obtain the judgment claimed in this action.

Although the administrator of the guardian could find no detailed accounts of Mr. Weston's guardianship they might have existed and might have been found and produced by Mr. Weston had he been cited during his lifetime. Again, he might perhaps have shown a settlement with the wards after they became of age and a release by them from any obligation to account to the Probate Court. Such settlement and release might have been valid. *Ela* v. *Ela,* 84 Maine, 423. The conveyance of real estate to the wards might have been shown by his testimony to be for such settlement and release. In fine, it is possible that Mr. Weston might have fully and satisfactorily accounted in every detail, or might have shown that he was legally released from accounting, had he been cited to account in his

lifetime when he could have the benefit of his own testimony. The wards had nearly nine years after the majority of the younger, to call him to account, but they both remained quiescent and silent for that long time, until death has closed the lips and extinguished the mind of Mr. Weston. Then, almost immediately after his death, when his testimony could no longer be adduced against them, they have made this move against his estate and against the administrator of one of his sureties deceased nearly thirty years ago.

We think every fair minded person must instinctively feel that this conduct of the wards was unfair and inequitable to the heirs and creditors of the deceased guardian, and especially so to the administrator of the long deceased surety who could not be heard at all in the Probate Court. He could not move in the matter. They could. By delaying action through nine years of time until the death of the guardian who, alone perhaps, by his testimony might have relieved his estate and sureties, they certainly have placed the administrator of the surety at a most grievous disadvantage. Can there be any doubt that if they were proceeding originally upon the equity side of this court to enforce an accounting, with this delay unaccounted for, the court would deny them an accounting on the ground that their unexcused delay of action had given them an unconscionable advantage, that is, because of their laches?

That statutes for limitation of actions have been enacted does not necessarily give a party invoking the equity powers of the court the full statutory time in which to do so. He must do equity ; must proceed seasonably while the other party has fair opportunity and means to defend. He cannot purposely wait until death or other cause of probable event has removed that opportunity. If it appear that by unnecessary delay he has placed the other party at a substantial disadvantage the court will dismiss his suit. In *Lawrence* v. *Rokes,* 61 Maine, 38, at pp. 42-43, this court said : " If by the laches and delay of the complainant it has become doubtful whether the other parties can be in a condition to produce the evidence necessary to a fair presentation of ·the case on their part . . . . or if they be subjected to any hardship which might have been avoided by more prompt proceedings although the full time may not have

elapsed which would be required to bar any remedy at law, the court will deal with the remedy in equity as if barred."

In *Forest* v. *Walls*, 93 Maine, 405, this court dismissed a bill in equity on the ground that the plaintiff wards had unnecessarily delayed until after the death of the guardian saying tersely and accurately (at p. 412): "Parties should not sleep upon their rights while others interested are dying and the evidence of the facts is fading out." The case *Rives* v. *Morris*, 108 Ala. 527, (18 So. Rep. 743) illustrates the point. There, after the death of the executor, the legatees under the will brought a bill for an accounting of the executorship against the sureties on his bond. The bill was dismissed solely because the legatees had waited till after the death of the executor thereby depriving the sureties of his knowledge and evidence. It is sufficient to refer to the elaborate opinion in that case for ample reasoning and citations of authorities if the proposition needs them.

But these wards remind us that they are not asking in this court for any accounting either by bill in equity or by an action of account. They say they made their claim for an accounting in the Probate Court, the court having jurisdiction of all the guardianship matters, and that they have established in that court their right to an accounting; that all these questions of settlement and laches were necessarily determined there by that court's granting the order and refusing to allow the account presented as a compliance with the order; that by sheer force of the statute, such order and failure to comply with it constitute a breach of the bond at that time, giving them a legal right, a legal cause of action, unaffected by any equitable considerations, and entitling them to judgment in their action at law as a matter of course.

Conceding all that can be fairly argued in favor of the exclusive jurisdiction of the Probate Court and the finality of its decrees, it is no new nor doubtful doctrine that an equity court has power to stay and prohibit the enforcement of a legal judgment even one regularly rendered by a superior court of general jurisdiction, when the inequity of enforcing it is made to appear. A Probate Court is an administrative rather than a judicial court. It cannot bind a court of full equity powers by a decision that a given course of conduct is not

inequitable, and cannot compel the equity court to enforce its decree however inequitable the conduct of the party obtaining it. It is to be borne in mind that the surety here is not asserting there is no breach of the bond but is claiming that the wards induced that breach by their own conduct ; hence that the question here is not whether this court sitting in equity shall or can reverse or modify the decree of the Probate Court, but is whether this court can restrain the wards from enforcing that decree on account of their own inequitable conduct in obtaining it. We have no doubt it can.

The power of a court of equity to inquire into the conduct of persons seeking its aid to enforce a decree of the Probate Court is illustrated by the case of *Phillips, Judge, &c.,* v. *Rogers,* 10 Pick. 105. In that case an administrator had been charged by the Probate Court with a balance due the estate and it did not appear that he had paid it over. Long afterward, when the administrator had become insolvent, demand was made upon him for payment, but he was unable to pay. The distributee then within one year after such demand brought a bill in equity on the administrator's bond against principal and sureties (that being an appropriate remedy in that State) to recover the amount. The distributee claimed there, as the wards do here, that his cause of action did not accrue until he had made demand and his demand not being complied with there was then a breach of the bond giving him a legal right to maintain a suit upon it. The court, however, dismissed the bill on the ground that the real claim, that for the balance of the account, was stale, even though the demand therefor and the consequent right of action were recent. The inequity of the delay, the hardship resulting from it, was the basis of the decision.

Even in a common law court in an action of law upon a probate bond when the Probate Court had decreed a balance due, the surety can defend, despite the probate decree, upon the ground of the fraud of the beneficiary in obtaining the decree. *Baylie Judge* v. *Davis,* 1 Pick. 206. *Woodbury* v. *Hammond,* 54 Maine, at p. 341. By parity of reasoning if the decree was obtained by other unlawful conduct of the beneficiaries the surety should be allowed to defend on that ground even in an action at law. So if the decree was

obtained by the inequitable conduct of the beneficiary an equity court at least may relieve the surety upon that ground.

But the wards further insist that the doctrine of laches can be invoked only in defense to a suit in equity, and never in support of a bill for affirmative relief. They argue that they are not seeking relief in equity but are proceeding at law to enforce a strict legal right and hence are not subject to the equity power of the court to deny them judgment because of their laches. Were they proceeding in equity the court as above shown would have power to relieve the surety from the consequences of their laches. Is the court shorn of this power by their proceeding in an action at law?

In those states and countries where there is no dividing wall between law and equity such a question could not arise. There in every case, however presented, the court can exercise without question its full powers, whether styled legal or equitable, to prevent injustice, to prevent either party suffering from the unfair, inequitable conduct of the other. While in this state the dividing wall has not yet been wholly removed, the equity powers of this court have been so enlarged by legislation and by natural growth that now practically no case properly brought before the court in either form of procedure, legal or equitable, is exempt from their exercise. When in 1874 the people through their legislature authorized the court to exercise full equity powers according to the usage and practice of courts of equity in all cases where there is not a plain adequate and complete remedy at law they practically empowered the court to prevent any injustice being done under the forms of law. Since that enactment the equity powers of this court can and do grow and expand with the growth and expansion of ideas of justice. Again, since 1893, at least, when what is known as the Law and Equity act was passed, the court can exercise equity powers directly in an action at law, can give effect in them to mere equitable defenses, and can also give effect to equitable answers to defenses based on strict law. Again in the same act it was provided that, when the court was proceeding under the act, "there appears to be any conflict or variance between the principles of law and those of equity as to the same subject matter the rules and principles of equity shall prevail." R. S. ch. 84, sec. 17-21.

In *Somerset Ry.* v. *Pierce,* 88 Maine, 86, the laches of the defendants was regarded as a ground for granting affirmative relief.

The subject matter between these parties is the question whether the wards can now exact from the administrator of the surety of their deceased guardian the full penalty for a breach of the bond which might not have occurred but for their own laches. According to the principles of equity they clearly cannot, as already shown. If the principles of law are in conflict or at variance with these principles of equity they must now give way. The court has the power and duty to recognize and enforce the principles of equity in this subject matter in whatever form it is presented. We think they require us in this case, for the reasons heretofore given, to restrain the wards from further prosecuting their suit against this plaintiff, if the facts shall prove to be as alleged. It should be understood that this conclusion is not based on the alleged settlement, but upon the delay, the laches, of the wards so heavily handicapping the defense. The principle settled is that this court with its present equity powers will not allow one party to gain by his own laches an advantage over the other party who could not himself move in the matter.

We were urged by both parties at the argument to also consider and pass upon the effect of sundry other allegations in the bill. It is not only unnecessary, but inexpedient, to do so at this time. The plaintiff may not be able to prove them. We further express the opinion that it would have facilitated progress in the case if the actual facts had been first determined, since, if sufficient facts are not proved this judgment goes for nothing, and is labor and time wasted, both of court and counsel.

It may be that instead of proceeding by a separate bill in equity, the facts alleged should have been pleaded in the action at law under R. S., ch. 84, sect. 17, p. 21, authorizing the pleading of equitable defenses in actions at law, but since the defendants here make no objection to the course taken and specifically ask us to determine the matters alleged upon the merits and in this proceeding, we waive the question of procedure.

The pro forma decree sustaining the demurrer and dismissing the bill must be reversed, and the case remitted for answer and hearing

upon the issues of fact. All questions of fact put in issue will of course be open to the parties.

> *Decree reversed.*
> *Demurrer overruled.*
> *Defendants to answer.*