## BANKER v. FORD MOTOR CO.
### No. 6763.

District Court, W. D. Pennsylvania.
March 7, 1933.

Wm. B. Jaspert, of Pittsburgh, Pa., for plaintiff.

John Weld Peck, of Cincinnati, Ohio, I. Jos. Farley, of Detroit, Mich., Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., and Longley, Bogle & Middleton, of Detroit, Mich., for defendant.

McVICAR, District Judge.

### Findings of Fact.

(1) The patent involved, 1,005,135, is for an improvement in windshields in relation to hinging the upper and lower sections together, and for the holding of the upper section in a folded position.

(2) Arthur L. Banker, the plaintiff, made application for the patent on December 19, 1907, which was granted October 10, 1911, and which expired October 10, 1928. This action was brought October 7, 1931.

(3) The defendant, a corporation of the state of Delaware, was incorporated in 1919. It purchased the assets of the Ford Motor Company, a Michigan corporation, in 1920. The stockholders of the Ford Motor Company of Michigan differed substantially from those of the Ford Motor Company of Delaware.

(4) Prior to 1915, the Ford Motor Company purchased its windshields from others; since that time, it has manufactured most of the windshields used on its cars.

(5) The windshields purchased by the Ford Motor Company and manufactured by it prior to 1925, were of the type that plaintiff alleges infringes the patent in suit. Such windshields were in common and general use throughout the United States prior to 1925.

(6) The Ford Motor Company constructed its first windshield department in the early part of 1915. The building occupied 10,000 square feet. The machinery and equipment cost approximately $20,000, and the space occupied by the building had an approximate value of $20,000. It employed about seventy-five persons therein. The Ford Motor Company constructed its second windshield department in the latter part of the year 1915. It occupied 20,000 square feet. The machinery and equipment cost approximately $40,000; the space occupied had an approximate value of $70,000; the number of persons employed was three hundred and fifty. The Ford Motor Company constructed its third windshield department in the year 1928. It occupies a space of 20,000 square feet; the machinery and equipment cost $135,000; the space occupied has an approximate value of $100,000; and three hundred persons are engaged as employees therein.

(7) The plaintiff knew of the defendant's use of the alleged infringing device prior to April 10, 1915, and knew of the continued use thereof by defendant from that date until this action was brought. He also knew, during the same time, that the same device was in general public use on many various types of automobiles made by different manufacturers.

(8) On April 10, 1915, plaintiff mailed at Pittsburgh to the defendant at Detroit a letter of which the following is a copy:

"April 10, 1915.
"The Ford Motor Co., Detroit, Michigan.

"Gentlemen: You will find enclosed copies of patents 1,005,135 and 1,005,136 covering features of wind shield construction which are embodied in shields used on the late models of your cars. The applications for

these patents, you will note, were filed in December 1907 and July 1910.

"You will note that 1,005,135 covers the means of supporting the upper and lower glass by means of metal shelf extending in towards the center from the frame. By means of this construction a shield can be made without a binding strip between the two lights of glass which would be an obstruction to clear vision.

"No. 1,005,136 covers a windshield construction in which the upper glass overlaps the lower glass. The advantage in this construction being in the fact that it prevents rain or wind blowing into the car between the two lights of glass, prevents the whistling of wind at this point, and at the same time permits a clear view unobstructed by any binding or engaging strips between the two sides of the shield.

"If you will take the trouble to look over these patents, you will find that they are complete in every respect.

"Considering the large number of cars you manufacture, all of the shields on which embody the above patented features, I thought you might be interested in purchasing these patents. Failing that you may have something to suggest in the way of royalty.

"Your early advice will be much appreciated.

"Very truly yours,
"ALB:CC."

Defendant was notified to produce the original letter, and made reply thereto that, after diligent search, it could not find it, nor did it have any record thereof.

(9) There was no evidence of any other communication between the plaintiff and the defendant, other than the letter above. There was no evidence of any threatened action against the defendant, or any other manufacturer or user, prior to the bringing of this action. No action was brought by plaintiff against defendant, or any other person, for infringement of the patent aforesaid, prior to the present action.

(10) During the period from April 10, 1915, to October 7, 1931, material witnesses for defendant have died; memories have been impaired by sickness and advanced age; records and material papers have been destroyed.

(11) The plaintiff, during said period, was actively engaged in the automobile business on a large scale in the city of Pittsburgh. He had offices in New York and Philadelphia. He has died since the time of bringing this action of a disease of the heart, known as an "athletic" heart. He had this trouble for twenty-three years prior to his death. During the period from April 10, 1915, to October 7, 1931, he personally managed his business; he visited his New York and Philadelphia offices. He drove his automobile to his business until about two years before his death. He was absent from his office occasionally for a few days on account of his heart trouble. He was physically capable of bringing action for the alleged infringement of his patent from the time he admits knowing of the defendant's structure, April 10, 1915, down to the time he brought this action.

(12) Plaintiff, prior to the bringing of this action, did not deem that defendant's windshields and those of a like type manufactured and used by others, were an infringement of the patent in suit. He acquiesced in such manufacture, and use, from April 10, 1915, to October 7, 1931.

### Conclusion of Law.

Plaintiff is not entitled to recover, and should be restrained from proceeding in the present action, by reason of his laches and other acts, which create an estoppel in favor of the defendant.

### Opinion.

This is an action to recover $18,000,000 damages alleged to have been caused by defendant through its violation of the patent in suit, from October 10, 1925, to October 10, 1928.

The defendant, in its affidavit of defense, set up the legal defenses of invalidity and infringement, and the equitable defense of laches and estoppel. A hearing of the equitable defense was had by the court, at which the evidence of the parties was heard. The court has made the foregoing findings of fact and conclusions of law. For the purpose of this opinion, the facts are briefly stated as follows:

The patent in suit, 1,005,135, is for an improvement in windshields. The invention claimed relates to the hinging of the upper and lower sections, and for the holding of the upper section in a folded position. Plaintiff made application for a patent December 18, 1907; it was granted October 10, 1911; it expired October 10, 1928. This action was brought October 7, 1931.

The defendant is a Delaware corporation, incorporated in 1919. It purchased, in March, 1920, from the Ford Motor Company, a Michigan corporation, its assets. The

stockholders of the Ford Motor Company, the Delaware corporation, are substantially different from the stockholders of the Ford Motor Company, the Michigan corporation.

Prior to 1915, the Ford Motor Company purchased its windshield requirements from others. Since that time, it has manufactured the most of the windshields that it used upon its cars. The windshields purchased and manufactured by the Ford Motor Company, prior to 1925, were of the type which plaintiff alleges infringed the patent in suit. Such windshields were made by other manufacturers, and were in public use throughout the United States prior to 1925.

In the early part of the year 1915, the Ford Motor Company constructed its first windshield department; the building occupied 10,000 square feet; the machinery and equipment cost approximately $20,000; the space had an approximate value of $20,000; it engaged seventy-five employees. Defendant constructed its second windshield department in the latter part of the year 1915; it occupied a space of 20,000 square feet; the machinery and equipment cost approximately $40,000; the space had an approximate value of $70,000; three hundred and fifty employees were engaged therein. Defendant constructed its third windshield department in 1928. It occupies 20,000 square feet; machinery and equipment cost approximately $135,000; the space occupied has an approximate value of $100,000; the number of employees is three hundred.

Plaintiff knew of the windshield that the Ford Motor Company was manufacturing prior to April 10, 1915. He has known of the windshield manufactured, sold, and used by defendant from said time until the bringing of this action. During the same time he has known that such windshields were manufactured by others, and were in general use throughout the United States.

On April 10, 1915, the plaintiff mailed a letter to the Ford Motor Company (see finding of fact 8), in which he stated that he inclosed two patents, one being the patent in suit. He also gave a brief description of said patents. He also stated therein that these patents covered features of windshields "embodied in windshields used on the old models of your cars." In concluding his letter, he said: "I thought you might be interested in purchasing these patents. Failing that you may have something to suggest in the way of royalty. Your early advice will be much appreciated." There is no evidence that this letter was received, other than the presumption which arises from the mailing thereof. There is no evidence of any other communications between the parties. There is no evidence of any threatened action by the plaintiff against the defendant or any other manufacturer or person for violation of the patent in suit. There is no evidence of any notice, or of any order on defendant or other manufacturer to desist from infringing the patent in suit. No action was brought by plaintiff for infringement against defendant, or any other person, other than the present action. During the time that plaintiff had knowledge of the alleged infringing device of the defendant, material witnesses of the defendant have died; the memories of others have been impaired by sickness and old age; material papers and records have been destroyed.

The plaintiff, during this period, was engaged in a large automobile business in Pittsburgh, with offices in New York and Philadelphia. He was manager of the Pittsburgh office, and gave personal attention thereto. He was physically able, during the time that he knew of the alleged infringing device of the defendant, down to the time that he brought this action, to bring an action for infringement. There is no claim of financial inability.

Would the facts in this case preclude a recovery by plaintiff on the grounds of laches and estoppel, if this action had been a suit in equity? If so, are they a defense in the present action at law?

Plaintiff knew of the defendant's manufacture, sale, and use of the alleged infringing device from April 10, 1915, to the time of bringing this action, October 7, 1931. Plaintiff knew that defendant was making large expenditures in the manufacture and sale thereof, that such devices were being manufactured by others, and that such devices were in general and common use throughout the United States. His failure to act justifies the conclusion that he did not consider such devices an infringement of the patent in suit, that he acquiesced in the manufacture thereof by defendant and others, and in the use thereof probably by millions of persons in the United States. To permit a recovery by plaintiff now, after material evidence to the issues in this case has been lost by defendant, after large expenditures have been made, and after a substantial change has been made in the ownership of the Ford Motor Company, would be inequitable and unjust. It seems well established that plaintiff, if in equity by reason of laches and es-

toppel, would not be entitled to recover. Among the authorities, see Corpus Juris, 21, 234, par. 229; Window Glass Machine Co. v. Pittsburgh Plate Glass Co., 284 F. 645 (C. C. A. 3d Cir.); Ford v. Huff, 296 F. 652 (C. C. A. 5th Cir.); Dwight & Lloyd Sintering Co. v. Greenawalt, 27 F.(2d) 823 (C. C. A. 2nd Cir.); Mosler v. Lurie, 209 F. 364 (C. C. A. 2nd Cir.); Richardson v. D. M. Osborne & Co., 93 F. 828 (C. C. A. 2nd Cir.); Woodmanse & Hewitt Mfg. Co. v. Williams, 68 F. 489 (C. C. A. 6th Cir.); Universal Arch Co. v. American Arch Co. (C. C.) 290 F. 647 (C. C. A. 7th Cir.); Kelley et al. v. Boettcher et al., 85 F. 55 (C. C. A. 8th Cir.); Cummings v. Wilson & Willard Mfg. Co., 4 F.(2d) 453 (C. C. A. 9th Cir.); Triplex Safety Glass Co. v. Kolb, 53 F.(2d) 1062 (D. C. E. D. Pa.); Cinema Patents Co. v. Duplex Motion Pictures Industries, 60 F.(2d) 1013 (D. C. E. D. N. Y.).

In Window Glass Machine Co. v. Pittsburgh Plate Glass Co., supra, the delay in bringing the infringement suit was eleven years. The court, by Woolley, C. J., said, on pages 649 and 650 of 284 F.:

"After the notice, in July, 1914, of their proposed suit for infringement nothing further was heard from the plaintiffs until December 31, 1918, when they filed the present bill. This was eleven years after one of the plaintiffs had brought the first suit and voluntarily dismissed it; nine years after the defendant had invested a large sum of money in the Mount Vernon plant and had begun commercial operations; four and one-half years after the plaintiffs had given notice of the proposed second suit; and three and one-half years after the defendant had invested an even larger sum in the Clarksburg plant and had there begun commercial operations. These dates are facts which figure against the plaintiffs' bill in the present action. The circumstances were such, without repeating them at length, that the plaintiffs knew or were chargeable with knowledge of the practices and the apparatus employed by the defendant at its several works during these periods. Foster v. Railroad Co., 146 U. S. 99, 13 S. Ct. 28, 36 L. Ed. 899; Johnston v. Standard Mining Co., 148 U. S. 360, 13 S. Ct. 585, 37 L. Ed. 480. On these facts and circumstances the defendant makes the defense of laches.

"This defense is based on a well-settled principle of law. In its application courts recognize the general rule that, in a case of this kind, mere delay, unaccompanied by anything else, will not ordinarily bar a suit for injunction against a naked infringer. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Menendez v. Holt, 128 U. S. 514, 9 S. Ct. 143, 32 L. Ed. 526; Prince's Metallic Paint Co. v. Prince Mfg. Co., 57 F. 938, 6 C. C. A. 647, infra. But they also recognize a distinction between mere delay and unreasonable delay, where in the latter is involved the element of lack of diligence and the consequent inequity, under the circumstances, of permitting the claim to be enforced. * * *

"When delay in prosecuting a claim is so unusual as to carry with it the appearance of being unreasonable, as in this case, there devolves upon a plaintiff the burden of disclosing the impediments to an earlier action; of showing, if ignorant of his rights, how he had remained in ignorance so long; and of revealing how and when he first came to a knowledge of the matters on which he relies in his bill for relief. Badger v. Badger, 2 Wall. 87, 17 L. Ed. 836; Hardt v. Heidweyer, 152 U. S. 547, 14 S. Ct. 671, 38 L. Ed. 548."

In Humphreys v. Walsh et al. (C. C. A.) 248 F. 414, on page 419, it is stated by Woolley, C. J.: "It is such delay as involves the inequity of permitting a claim to be asserted after the death of parties, change of title, intervention of the rights of others, where, in consequence, evidence has been lost or has become obscured, the discovery of the truth is made difficult, and the party attacked is placed in a position of evident disadvantage."

In Woodmanse & Hewitt Manufacturing Co. v. Williams et al., supra, the delay in bringing the infringement suit was fourteen years. The court, by Lurton, C. J., said on page 493 of 68 F.: " * * * Reasonable diligence as well as good faith are necessary to call into operation the powers of a court of equity. Maxwell v. Kennedy, 8 How. 222 [12 L. Ed. 1051]. One who invokes the protection of equity must be 'prompt, eager, and ready' in the enforcement of his rights. Equity will not encourage a suitor who has long slept over his rights. It was well observed by Judge Coxe, in Kittle v. Hall [C. C.] 29 F. 511, that 'time passes, memory fails, witnesses die, proof is lost, and the rights of individuals and of the public intervene. Long acquiescence and laches can only be excused by proof showing excusable ignorance, or positive inability to proceed on the part of the complainant, or that he is the victim of fraud or concealment on the part of others.' He adds 'that the court will not entertain a case

when it appears that the complainant, or those to whose rights he has succeeded, have acquiesced for a long term of years in the infringement of the exclusive right conferred by the patent, or have delayed, without legal excuse, the prosecution of those who have openly violated it.' These general principles find ample support in many cases."

▪ Laches and estoppel are equitable defenses, which may be set up in the present action at law. In 32 C. J. p. 84, par. 70, it is stated: "* * * The power of courts of equity in a proper case to enjoin actions or proceedings at law is of long settled standing, and rests on the clear authority vested in them over persons within their jurisdiction."

In 32 C. J. p. 101, par. 100, it is also stated: "Except where the rule is modified or abrogated by statute, the existence of an equitable defense which cannot be made available as a defense in an action at law is sufficient ground for an injunction to restrain proceedings at law. The court of equity in such a case will enjoin the suit at law, and will itself assume jurisdiction of the entire cause and do complete justice between the parties."

The Act of March 3, 1915, c. 90, 38 Stat. 956, 28 USCA § 398, provides: "In all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court. The defendant shall have the same rights in such case as if he had filed a bill embodying the defense or seeking the relief prayed for in such answer or plea."

In Liberty Oil Co. v. Condon National Bank et al., 260 U. S. 235, on page 242, 43 S. Ct. 118, 121, 67 L. Ed. 232, Chief Justice Taft said: "Where an equitable defense is interposed to a suit at law, the equitable issue raised should first be disposed of as in a court of equity, and then, if an issue at law remains, it is triable to a jury. Massie v. Stradford, 17 Ohio St. 596; Dodsworth v. Hopple, 33 Ohio St. 16, 18; Taylor v. Standard Brick Co., 66 Ohio St. 360, 366, 64 N. E. 428; Sutherland Code Pl. and Pr. § 1157. The equitable defense makes the issue equitable, and it is to be tried to the judge as a chancellor. The right of trial by jury is preserved exactly as it was at common law. The same order is preserved as under the system of separate courts. If a defendant at law had an equitable defense, he resorted to a bill in equity to enjoin the suit at law until he could make his equitable defense effective by a hearing before the chancellor. The hearing on

that bill was before the chancellor, and not before a jury, and, if the prayer of the bill was granted, the injunction against the suit at law was made perpetual, and no jury trial ensued. If the injunction was denied, the suit at law proceeded to verdict and judgment. This was the practice in the courts of law and chancery in England when our Constitution and the Seventh Amendment were adopted, and it is in the light of such practice that the Seventh Amendment is to be construed."

In Ford v. Huff, 296 F. 652 (C. C. A. 5th Cir.) (certiorari refused 266 U. S. 602, 45 S. Ct. 90, 69 L. Ed. 462), an action at law was brought to recover a royalty alleged to be due the plaintiff for use of a patent after a delay of ten years in making claim therefor. The Circuit Court of Appeals held that the defendant had the right to set up the equitable defense of laches and estoppel, saying, on page 657 of 296 F.:

"It would not be consistent with equity and good conscience for plaintiff to enforce the claim asserted by this suit after he, with knowledge of the facts and under conditions inviting the assertion of that claim if it was relied on, acquiesced in defendant treating that claim as nonexistent; after he demanded and accepted payment of the balance of the reward mentioned as a final settlement of all claims based on the services rendered, and theretofore and thereafter for many years refrained from making the claim now asserted, while defendant, in reliance on the belief and understanding, induced by plaintiff's conduct, that such claim never existed or had been abandoned, was changing his position in such a way that he will be injured if plaintiff now is permitted to enforce his claim. Under equitable principles applicable to the state of facts alleged in the plea plaintiff has, by estoppel and laches, lost the right to enforce the claim asserted by him. Simmons v. Burlington, etc., R. Co., 159 U. S. 278, 291, 16 S. Ct. 1, 40 L. Ed. 150; Washington v. Opie, 145 U. S. 214, 12 S. Ct. 822 [36 L. Ed. 680]; Ward v. Sherman, 192 U. S. 168, 176, 24 S. Ct. 227, 48 L. Ed. 391; Moran v. Horsky, 178 U. S. 205, 20 S. Ct. 856, 44 L. Ed. 1038; 10 R. C. L. 694. The effect of one being estopped to enforce a claim is that his plight is substantially the same as it would have been if the claim had never existed.

"Under amended section 274b of the Judicial Code (38 Stat. 956 [Comp. St. § 1251b (28 USCA § 398)]), a defendant in an action at law who files a plea setting up an

equitable defense is given the same rights as if he had set them up in a bill in equity. Liberty Oil Co. v. Condon National Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232. We are of opinion that a bill in equity disclosing the state of facts alleged in the plea in question would show that defendant was entitled to prevent the enforcement of the claim asserted by this suit on the ground that plaintiff's conduct had been such as to deprive him of the right to enforce that claim. The term 'equitable defenses,' within the meaning of section 274b of the Judicial Code, includes a state of facts which, by virtue of doctrines recognized by courts of equity alone, has the effect of barring, or rendering unenforceable against a defendant in a suit, the claim asserted by the plaintiff therein."

Similar rulings were made by the Supreme Court of Maine, in Clark v. Chase, 101 Me. 270, 64 A. 493, and by the Supreme Court of Mississippi, in Wall v. Harris, 90 Miss. 671, 44 So. 36. See, also, 32 C. J. 86; 4 Cyc. Fed. Procedure, p. 377, § 1165; Guffey v. Gulf Production Co., 17 F.(2d) 930 (C. C. A. 3d Cir.); Thorpe v. Filene's Sons Co., 40 F.(2d) 269 (D. C. Mass.).

I conclude that the equitable defense of laches and estoppel should be sustained.

Let an order be prepared and submitted in accordance with the foregoing findings of fact, conclusion of law, and this opinion.